UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

AMBERLY ENCINIAS,                                         No. 16-13058 ta7

    Debtor.

EDWARD A. MAZEL,

    Plaintiff,

v.                                                                            Adv. No. 17-1013

JANICE ENCINIAS,

    Defendant.

## **OPINION**

Debtor Amberly Encinias repaid a loan from her mother, the Defendant, about two months before this chapter 7 case was filed. The Court now addresses whether to grant the Plaintiff's summary judgment motion that the repayment is an avoidable preferential transfer. The Court concludes that Plaintiff did not provide admissible evidence that the transfer enabled Defendant to receive more than she would have if the transfer had not occurred. As this is an element of an avoidable preference claim, the Plaintiff's motion will be denied.

## I. FACTS NOT SUBJECT TO GENUINE DISPUTE[1]

The Court finds that, for the purposes of ruling on the motion for summary judgment, the following facts are not in genuine dispute:[2]

Amberly Encinias (the "Debtor") filed her voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 13, 2016.

Janice A. Encinias ("Defendant") is Debtor's mother. Defendant represents herself in this adversary proceeding.

Debtor and her son were involved in a car accident in August 2015. Debtor struggled to pay rent and other bills after the accident. She was unable to work or continue with school for a time, and also had to take care of her son's injuries.

Defendant loaned Debtor $775 a month from January 2016 through October 2016. Defendant got this money from her retirement account. The total amount loaned was $9,300.

Debtor planned to pay her mother back when Debtor received money in settlement of her car accident claim.

At some point before October 13, 2016, Debtor received a settlement check, for an unspecified amount.

---

[1] Some facts are taken from the docket in this case of which the Court takes judicial notice. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[2] The record in this proceeding is meager. The trustee did not file an affidavit, deposition transcripts, or other evidence. Instead, the Court has the docket in the bankruptcy case, Defendant's answer to the complaint, and Defendant's response to the motion for summary judgment. Defendant did not file an affidavit either.

On or about October 13, 2016, Debtor paid the Defendant $7,685 (the "Transfer") in partial or full payment of the $9,300 loan.

Defendant is experiencing financial hardship. She used the $7,685 to pay her own bills, has a husband with significant medical problems, and recently lost a rental property to foreclosure. Collecting any judgment may prove difficult.

Debtor filed this bankruptcy case pro se, although she had the assistance of a bankruptcy petition preparer. Her bankruptcy schedules and statement of financial affairs were not very well done. For example, she did not list the Transfer on her Statement of Financial Affairs. There is no mention of the accident settlement proceeds. The only two items of personal property scheduled are a car and "clothing." Debtor's Schedule J does not list rent as an expense, even though she was renting a house when she filed her case (this omission was later corrected.)

The Debtor's bankruptcy schedules indicate that she insolvent on the petition date. Defendant admits Debtor's insolvency.

## II. DISCUSSION

A.  Summary Judgment Standards.

The proper use of summary judgment streamlines litigation and avoids the unnecessary expense of proceeding to trial. *See Farnell v. Albuquerque Publ'g Co.,* 589 F.2d 497, 502 (10th Cir. 1978) ("[S]ummary judgment is a useful tool which may avoid needless trials.") (citation omitted); *Mitchell v. Zia Park, LLC,* 842 F. Supp. 2d 1316, 1321 (D.N.M. 2012) ("Principal purposes of summary judgment include streamlining litigation and saving needless time and expense by isolating and disposing of purely legal issues and factually unsupported claims and defenses.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 323-24, (1986) (remaining citation omitted)). In accordance with Fed. R. Civ. P. 56, the Court will grant summary judgment when the requesting party demonstrates that there is no genuine dispute as to a material fact and that the movant is

-3-
Case 17-01013-t    Doc 23    Filed 09/26/17    Entered 09/26/17 11:00:03 Page 3 of 10

entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). The party opposing summary judgment "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996)). To resist a properly supported motion for summary judgment, the opposing party may not rely on the allegations in the complaint or the denials contained in the answer, "but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (internal quotation marks omitted).

    B.    <u>Avoidable Preferential Transfers</u>.

Section 547 of the Bankruptcy Code empowers the Trustee to avoid preferential transfers for the benefit of the bankruptcy estate. It provides in relevant part:

> Except as provided in subsections (c) and (i)[3] of this section, the trustee may avoid any transfer of an interest of the debtor in property—

---

[3] Subsection (c) limits the trustee's ability to recover transfers for "a contemporaneous exchange for new value" and transfers made in the ordinary course of business or financial affairs of the debtor. § 547(c). Subsection (i) is a technical provision designed to "protect non-insiders by adding a safe harbor provision to section 550." 5 Collier on Bankruptcy ¶ 547.03[3] (16th ed.). Neither subsection is applicable to this case.

-4-

> (1) to or for the benefit of a creditor;
> (2) for or on account of antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Stated in non-statutory language, a transfer must satisfy six conditions to qualify as an avoidable, preferential transfer:

> 1. The debtor must have had an interest in the transferred property;
> 2. The transfer must be to a creditor, or for the benefit of a creditor;
> 3. The transfer must be on account of a debt owed by the debtor to the creditor before the transfer was made;
> 4. The transfer must be made when the debtor is insolvent;
> 5. The transfer must have occurred within the preference period – i.e., within 90 days before the date of the petition, or, if the creditor is an insider, within one year of the petition date; and
> 6. The transfer must enable the creditor to receive more than the creditor otherwise would have received if the transfer had not occurred and the bankruptcy estate were liquidated under Chapter 7.

*See Brown v. KOT, Inc. (In Hertzler Halstead Hosp.),* 334 B.R. 276, 286 (Bankr. D. Kan. 2005) (citing *In re M & L Bus. Mach. Co., Inc.,* 84 F.3d 1330, 1339 (10th Cir. 1996)). The trustee bears the burden of proving every element establishing a preferential transfer by a preponderance of the evidence. *See* 11 U.S.C. § 547(g) ("the trustee has the burden of proving the avoidability of a transfer under subsection (b)"); *ABB Vecto Gray, Inc. v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.),* 9 F.3d 871, 874 (10th Cir. 1993) ("a trustee seeking to avoid an allegedly preferential transfer under § 547 'has the burden of proving by a preponderance of the evidence every essential, controverted element resulting in the preference.'") (quoting 4 *Collier on*

*Bankruptcy,* ¶ 547.21[5] at 547-93 (15th Ed. 1993)); *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1017 (10th Cir. BAP 1998) (it is "the Trustee's burden to establish all elements of § 547(b), including insolvency.").

    C.    <u>The Avoidability of the Transfer</u>.

The Court will analyze each of the six elements outlined above to determine whether the Plaintiff is entitled to summary judgment that the Transfer is avoidable.

    1.    <u>The Debtor must have had an interest in the transferred property</u>. There can be no avoidable transfer unless the debtor had an interest in the property transferred. Here, the Defendant admitted that the money she received was from the Debtor's car accident settlement proceeds.

    2.    <u>The transfer must be to a creditor, or for the benefit of a creditor</u>. Section 101(10) defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." A "claim" is

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Defendant loaned Debtor $9,300 and has a claim against the Debtor in this bankruptcy case. Defendant admits that she loaned the Debtor $9,300, and that she received the Transfer in partial repayment of that loan. There is no dispute, therefore, that the Transfer was made to a creditor.

    3.    <u>The transfer must be on account of a debt owed by the debtor to the creditor before the transfer was made</u>. An antecedent debt is one incurred before the allegedly preferential transfer was made. *G.G. Survivor Creditor Corp. v. Harari (In re G. Survivor Corp.),* 217 B.R. 433, 440 (Bankr. S.D.N.Y. 1998); 4 *Collier on Bankruptcy* ¶ 547.03[4] (16th ed.) ("[A] debt is

-6-

antecedent if it is incurred before the transfer: the debt must have preceded the transfer."). Here, Defendant's loans to her daughter were made between January and October, 2016. The Transfer occurred October 13, 2016. Debtor's debt obligation to Defendant preceded the Transfer. Further, there is nothing in the record indicating that the payment was not "on account of" the loan. On the contrary, the Defendant admits that the Transfer reduced or extinguished Debtor's obligation to the Defendant.

        4.    <u>The transfer must be made when the debtor is insolvent</u>. The Bankruptcy Code defines "insolvent" as:

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
>  (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>  (ii) property that may be exempted from property of the estate under section 522 of this title.

"Entity" includes persons. § 101(15).

There is a presumption of insolvency "on and during the 90 days immediately preceding the date of the filing of the petition." § 547(f). This presumption, if not rebutted by Defendant, is sufficient to grant the Trustee summary judgment. *See Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.),* 695 F.2d 833, 835 (5th Cir. 1983) (affirming the bankruptcy court's grant of summary judgment on the issue of insolvency where the opposing party failed to sufficiently rebut the presumption to trigger the requirement for the trustee to provide additional evidence of insolvency at the time of the transfer); *Floyd v. Shindler (In re Rodriguez),* 204 B.R. 510, 517 (Bankr. S.D. Tex. 1995) (citation omitted) ("A trustee is not required to present evidence on insolvency [for transfers made within 90 days before the petition date] unless a defendant first presents some evidence to rebut the presumption") (citation omitted); *Maloney-Crawford, Inc. v.*

*Huntco Steel, Inc., (In re Maloney- Crawford, Inc.),* 144 B.R. 531, 535-537 (Bankr. N.D. Okla. 1992) (where creditor provided insufficient evidence to rebut the presumption of insolvency, the undisputed facts were sufficient to establish insolvency for purposes of avoiding a preferential transfer under § 547(b)).

Here, the Transfer occurred within 90 days of the petition date, so the insolvency presumption applies. Further, in her answer Defendant admits that Debtor was insolvent when the Transfer was made.

      5.    <u>The transfer must have occurred within the preference period</u>. The "insider" preference period in this case is between December 13, 2015 and December 12, 2016. The non-insider preference period is between September 14, 2016 and December 13, 2016. The Defendant admits that the Transfer was made on October 13, 2016. Whether or not Defendant is an insider (and it seems clear that she is), the Transfer occurred well within the preference period.

      6.    <u>The transfer must enable the creditor to receive more than the creditor otherwise would have received if the transfer had not occurred and the bankruptcy estate were liquidated under Chapter 7</u>. This element can be satisfied by undisputed evidence that unsecured creditors would not be paid in full in a hypothetical chapter 7 liquidation. *See, e.g., Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 229 (1936) (a pre-petition payment of 10% on a claim "will necessarily result in such creditor receiving a greater percentage than other creditors, if the

distribution in bankruptcy is less than 100 per cent").[4] If the bankruptcy estate is too small to pay unsecured claims in full, any pre-petition distribution to an unsecured creditor would enable that creditor to receive more than it would get had the transfer not been made. *See Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 465 (6th Cir. 1991) ("Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.") (citation omitted); *Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.),* 778 F.2d 1416, 1421 (9th Cir. 1985) (same); *Vaso,* 537 at 189 (same).

The petition date is the relevant date for conducting the hypothetical liquidation analysis. *In re Castletons, Inc.,* 990 F.2d 551, 554 (10th Cir. 1993). The Court therefore must include the value of the transferred asset before evaluating the "hypothetical liquidation" to determine the expected distribution to creditors through a Chapter 7 liquidation. *See In re Connolly North America, LLC*, 398 B.R. 564, 571 (Bankr. E.D. Mich. 2008) (explaining that the court determines "the liquidation value of the assets that were in the bankruptcy estate when the bankruptcy petition was filed, and . . . add[s] to that the value of the allegedly preferential transfers that the Trustee seeks to avoid."). The Court then compares what the transfer enabled the creditor to receive with what the creditor would have received if case were administered under Chapter 7, including the transferred asset. *See Castletons,* 990 F.2d at 555 (§ 547(b)(5) requires that the transfers enable

---

[4] *See also In re Vaso Active Pharm., Inc.,* 537 B.R. 182, 189 (D. Del. 2015) ("the Trustee need only establish that [creditor] would have received less than a 100% payout on his unsecured, nonpriority claim in a hypothetical chapter 7 liquidation."); *Skehen v. Bare Bones Graphics (In re Sweet),* 2009 WL 485136, *3 (Bankr. D.N.M.) ("unless there are sufficient assets to pay all unsecured claims in full, the transfer . . . would enable [creditor] to receive more than it would otherwise be entitled to receive . . .") (citing *Rodriguez v. Whatcott (In re Walker),* 389 B.R. 746, 749 (Bankr. D. Colo. 2008)); *Silagy v. Jay's Auto Sales, Inc. (In re Jackson),* 2006 WL 3064087, *3 (Bankr. N.D. Ohio) ("courts have found that unless unsecured creditors are to receive a one hundred percent distribution from the estate, any payment an unsecured creditor receives during the preference period naturally entitles it to more than it would receive in the hypothetical liquidation").

the creditor "to receive more on its debt than would be available to it in a Chapter 7 distribution").

Here, Defendant clearly received a substantial payment within the preference period on account of antecedent debt. However, there is no admissible evidence about the amount unsecured creditors would receive in a hypothetical chapter 7 liquidation. The Plaintiff relies on the Debtor's schedules to support this element of his case, but those schedules are not admissible evidence against Defendant.[5] An affidavit from the Plaintiff, stating that general unsecured creditors will receive at best nominal distribution and will in no event receive full payment, may satisfy the requirement. *See, e.g., In re All American of Ashburn, Inc.*, 65 B.R. 303 (Bankr. N.D. Ga. 1986).

As the Plaintiff provided no affidavit or other evidence to support his position on this issue, the Court cannot grant the summary judgment motion.

### III. CONCLUSION

The Plaintiff carried his burden of proving all elements of an avoidable preference claim except for one. Because there is no evidence about the projected dividend in a hypothetical chapter 7 liquidation, the Plaintiff's motion for summary judgment must be denied.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 26, 2017

Copies to:

Janice Encinias
PO Box 102
Las Vegas, NM 87701

Edward Alexander Mazel
1122 Central Ave. SW, Suite 1
Albuquerque, NM 87102

---

[5] They probably are admissible in a claim against the Debtor, since they would be admissions, and therefore not hearsay. *See* Fed. R. Evid. 801(d)(2).